# UNITED STATES DISTRICT COURT

<u>NORTHERN</u> DISTRICT OF <u>ILLINOIS, EASTERN DIVISION</u>

UNITED STATES OF AMERICA

v.

ARRIBA LEWIS and
WILLIAM DAMIEN CARTER

(Name and Address of Defendant)

**FILED**
KC
11-13-07
NOV 1 3 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**CRIMINAL COMPLAINT**

CASE NUMBER: **07 CR 746**

MAGISTRATE JUDGE NOLAN

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

1.    From in or about <u>July 2007 to November 2007</u>, in <u>Cook</u> County, in the <u>Northern</u> District of <u>Illinois</u>, defendants did conspire, in violation of Title 21, United States Code, Section 846, with each other and with other persons to knowingly and intentionally distribute and possess with intent to distribute a controlled substance, namely, more than 50 grams of mixtures and substances containing cocaine base in the forma of crack cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

I further state that I am a <u>Task Force Officer, Drug Enforcement Administration</u>, and that this complaint is based on the following facts:  See attached affidavit.

Continued on the attached sheet and made a part hereof:  _X_ Yes    ____ No

X _____
Signature of Complainant

Sworn to before me and subscribed in my presence,

<u>November 13, 2007</u>    at
Date

<u>Chicago, Illinois</u>
City and State

<u>NAN R. NOLAN, U.S. Magistrate Judge</u>
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

COUNTY OF COOK              )
                           )    SS
STATE OF ILLINOIS          )

## AFFIDAVIT

I, Michael K. Parker, being first duly sworn on oath, depose and state as follows:

1.      I have been employed with the Chicago Police Department since December of 1991, and I am currently assigned to the HIDTA (High Intensity Drug Trafficking Areas) DEA (Drug Enforcement Administration) Task Force, Group 41, within the DEA Chicago Field Division, Chicago, Illinois. Prior to working with the HIDTA DEA Task Force, I was assigned to the Narcotics and Gang Investigation Section of the Chicago Police Department, from approximately November 1997 to December 2006. In that capacity, I've acted as the case officer on several narcotic conspiracy cases, and I have also acted as an undercover officer (buy officer) in which I have made countless undercover narcotic transactions while acting in an undercover capacity. In my law enforcement career I have conducted and participated in numerous investigations that have resulted in the seizures of controlled substances, including cocaine, cocaine base in the form of crack cocaine, marijuana and heroin. I am familiar with and have participated in all of the normal methods of investigation, including but not limited to visual surveillance, the questioning of witnesses, controlled deliveries, the execution of search and arrest warrants, the management and use of informants, and the drafting and monitoring of pen registers and trap-and-trace devices.

2.      From July 2007 through the present, Chicago HIDTA DEA Group 41 has been investigating ARRIBA LEWIS, who is a member of the Traveling Vice Lords street gang which occupies and controls the sale and distribution of Crack Cocaine on the

Westside of Chicago. The information contained in this affidavit has been obtained from surveillance, consensually-recorded conversations, lab reports and undercover controlled narcotic transactions.

3.      This affidavit is being submitted for the limited purpose of setting forth probable cause to support a criminal complaint charging the two individuals identified below. I have not set forth each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are sufficient to establish probable cause as to each individual named herein.

4.      There is probable cause to believe that from at least July 2007 to present, ARRIBA LEWIS and WILLIAM DAMIEN CARTER conspired with each other and other unknown co-conspirators to knowingly and intentionally distribute and possess with intent to distribute a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 846.

5.      The following is a summary of the events as it pertains to each of the above named individuals:

**July 12, 2007, Purchase of Crack Cocaine From WILLIAM DAMIEN CARTER**

6.      At approximately 10:00 AM, Undercover Officer (UCO) Parker received a telephone call from the Confidential Source (CS), who then related that he/she spoke with ARRIBA LEWIS via telephone in reference to purchasing three 3 ounces of Crack Cocaine. The CS further related that LEWIS wanted $2,000 for 3 ounces.

7.      At approximately 2:00 PM, UCO Parker, with the assistance of Task Force Officers, met with the CS at an undisclosed location for the purpose of purchasing 3

2

ounces of Crack Cocaine from LEWIS. The CS was then searched for United States Currency (U.S.C.) and contraband with negative results.

8.    At approximately 2:30 PM, UCO Parker tendered $2,000.00 DEA Official Advanced Funds (OAF) to the CS for the purpose of purchasing 3 ounces of Crack Cocaine from LEWIS. The CS was then equipped with a recording device. UCO Parker then drove the CS to the 1700 block of North Mango.

9.    At approximately 2:37 PM the CS exited the covert vehicle while UCO Parker remained inside of the vehicle. As the CS exited the vehicle, UCO Parker observed an unknown male black subject (now known as WILLIAM DAMIEN CARTER), wearing a black t-shirt and blue jean shorts, exit 1712 N. Mango and meet with the CS in front of that location. At that time, CARTER waived at UCO Parker.

10.    At approximately 2:40 PM, UCO Parker observed CARTER hand the CS a small object in exchange for the $2,000.00 OAF issued to him/her previously by UCO Parker.

11.    At approximately 2:42 PM, UCO Parker observed a Silver Pontiac Grand Prix, bearing an Illinois License Plate of 9409659 park directly in front of 1712 N. Mango, at which time a male black subject (later identified as ARRIBA LEWIS) wearing a black baseball cap, white t-shirt and blue jean shorts, exited the vehicle and entered the front gate of 1712 N. Mango. This subject then met with CARTER.

12.    At approximately 2:42 PM, the CS returned and entered the covert vehicle and confirmed that the subject that just exited the silver Grand Prix was, in fact, ARRIBA LEWIS. The CS then tendered to UCO Parker an off-white chunky rock-like substance (suspect Crack Cocaine) wrapped in a clear knotted plastic sandwich bag.

3

13.     At approximately 2:43 PM, CARTER entered the passenger's side of the silver Grand Prix, and ARRIBA LEWIS entered the driver's side. LEWIS then drove southbound on Mango and then eastbound.

14.     At approximately 2:50 PM, UCO Parker, along with other Task Force Officers returned to the previous undisclosed location where the suspect Crack Cocaine was field tested utilizing a field test kit. The substance tested positive for the presence of cocaine base, and based on its appearance, in my opinion it was Crack Cocaine. The CS was, again, searched for any additional U.S.C. and contraband with negative results.

**July 13, 2007, Consensually-Recorded Conversation with ARRIBA LEWIS**

15.     On July 13, 2007, UCO Parker met with the CS for the purpose of placing a consensually-recorded telephone call to ARRIBA LEWIS in reference to the transaction that occurred on the previous date (July 12, 2007). The CS placed a direct-connect call (183*697*8803) to LEWIS in an effort to set up another undercover purchase of Crack Cocaine. UCO Parker spoke with LEWIS, and told LEWIS that UCO Parker wanted to purchase more in the upcoming weeks.

**August 9, 2007, Purchase of Crack Cocaine From WILLIAM DAMIEN CARTER**

16.     On August 09, 2007, UCO Parker and the CS placed a consensually recorded telephone call (773-739-7230) to WILLIAM DAMIEN CARTER to purchase three 3 ounces of Crack Cocaine. UCO Parker, operating in an undercover capacity, spoke with CARTER, who then related that he (CARTER) wanted $2,000 for 3 ounces of Crack Cocaine. At approximately 6:20 PM, UCO Parker and other Task Force Officers and DEA Agents met with the CS at an undisclosed location for the purpose of discussing the details

4

of the upcoming transaction. UCO Parker was equipped with a recording device operated by DEA Agent T. Evans. At approximately 6:40 PM, UCO Parker and the CS drove the undercover vehicle to the 1700 block of North Mango and parked at approximately 1711 N. Mango. At this time, UCO Parker observed CARTER enter 1712 N. Mango. Shortly thereafter, CARTER exited the same location and walked over to UCO's covert vehicle. CARTER then entered the rear of the vehicle and pulled out a small battery operated gram scale and a knotted plastic bag containing suspect crack cocaine. UCO Parker then tendered to CARTER $2000.00 DEA OAF. UCO Parker then proceeded to weigh the suspect crack cocaine, and it weighed approximately 86 grams. UCO Parker then had a conversation with CARTER about purchasing one (1) kilogram of Crack Cocaine. CARTER stated, but not verbatim, that a "brick" (referring to a kilogram of Crack Cocaine) would cost $24,000. Also, CARTER acknowledged that he and LEWIS worked together. CARTER then exited UCO Parker's covert vehicle and walked to approximately 1723 N. Mango and entered a silver Dodge Charger bearing Illinois license plate 8058258. This vehicle was occupied by LEWIS. UCO Parker and other Task Force Officers and DEA agents returned to the previous undisclosed location where the suspect Crack Cocaine was field tested utilizing a field test kit. The substance tested positive for the presence of cocaine base, and based on its appearance, in my opinion it was Crack Cocaine.

**August 29, 2007, Consensually-Recorded Conversation with ARRIBA LEWIS**

17.    On August 29, 2007, UCO Parker and Sgt. Calderon met with the CS for the purpose of making a consensually-recorded telephone call to LEWIS. The CS attempted to utilize his/her cell phone to place the call to LEWIS but the phone malfunctioned. UCO Parker, acting in an undercover capacity, then utilized his undercover cell phone to place

5

the call to LEWIS. The CS placed a direct connect phone call (183-697-8803) to LEWIS. When LEWIS answered, the CS told LEWIS that UCO Parker wanted to talk to him (LEWIS). UCO Parker spoke with LEWIS in reference to purchasing a ¼ kilogram of Crack Cocaine. UCO Parker related to LEWIS that he wanted to deal directly with him (LEWIS) instead of CARTER. LEWIS related that he will deal with UCO Parker directly. UCO Parker and LEWIS agreed to a price of $6,000.00 for nine (9) ounces of Crack Cocaine. This transaction will take place approximately a week from this conversation.

**September 4, 2007, Consensually-Recorded Conversation with ARRIBA LEWIS**

18.    On September 04, 2007, UCO Parker placed a consensually-recorded telephone call to LEWIS to confirm a time for the narcotic transaction. UCO Parker also related to LEWIS that "Damo" (WILLIAM DAMIEN CARTER) was putting too much cut in the Cocaine and that I, UCO Parker, was getting too many complaints. UCO Parker told LEWIS that he had to make it better, at which time LEWIS assured UCO Parker that he will make it better. LEWIS agreed to meet on Thursday, September 6, 2007.

**September 5, 2007, Consensually-Recorded Conversation with ARRIBA LEWIS**

19.    On September 05, 2007, UCO Parker placed a consensually-recorded telephone call to LEWIS for the purpose of confirming a time and location that the narcotic transaction will take place. It was ultimately agreed upon that the transaction will take place on the 1700 block of N. Mango, Chicago, Illinois, between 2:00 PM and 3:00 PM on September 06, 2007.

**September 6, 2007, Controlled Purchase of Crack Cocaine From ARRIBA LEWIS**

20.    On September 06, 2007, UCO Parker and the CS placed a consensually-

6

recorded telephone call to LEWIS, and he agreed to meet UCO Parker and the CS on the 1700 block of North Mango Ave, Chicago, Illinois, around 2:30 PM. After the telephone conversation, UCO Parker and the CS drove the covert vehicle to 1724 N. Mango Ave. Upon arrival, the CS called LEWIS to notify him (LEWIS) that we had arrived. Moments later, UCO Parker observed LEWIS walking from the rear of 1724 N. Mango Ave. LEWIS then got into the rear passenger's side of UCO Parker's covert vehicle. UCO Parker then asked LEWIS for the Crack Cocaine and showed LEWIS the bundle of U.S.C. LEWIS then exited the covert vehicle and entered the front of 1724 N. Mango Ave. After a short period of time, LEWIS returned to the covert vehicle with a small gram scale and two (2) clear knotted plastic bags of a white rock-like substance, suspect Crack Cocaine. LEWIS then proceeded to weigh each bag which had a total weight of approximately 250 grams (1/4 kilogram). UCO Parker then gave LEWIS $6000.00 U.S.C. ($3000 CPD pre-recorded funds and $3000 DEA OAF). LEWIS exited the covert vehicle and walked back towards 1724 N. Mango Ave. UCO Parker and the CS returned to an undisclosed location where the contents of the suspect Crack Cocaine was tested utilizing a field test kit. The substance tested positive for the presence of cocaine base, and based on its appearance, in my opinion it was Crack Cocaine.

7

**CONCLUSION**

21.    Wherefore, Affiant submits that the foregoing evidence establishes that the

above listed defendants conspired and agreed with each other and with other unknown co-

conspirators to possess with intent to distribute controlled substances, namely, in excess

of 50 grams of cocaine base in the form of "crack" cocaine, in violation of Title 21, United

States Code, Section 846, and did aid and abet said conspiracy, in violation of Title 18,

United States Code, Section 2.

FURTHER AFFIANT SAYETH NOT.


_____

MICHAEL PARKER
Task Force Officer, Drug Enforcement Administration


SUBSCRIBED AND SWORN TO BEFORE ME THIS 13th of November, 2007.


_____
NAN R. NOLAN
United States Magistrate Judge

8